SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 {¶ 45} I concur with the lead opinion to reverse the conviction for a new trial based on the erroneously admitted other acts evidence, but I write separately to clarify the analysis. I also dissent from the lead opinion's rationale for rejecting Hart's preindictment-delay challenge.
 

 {¶ 46} Hart demonstrated actual prejudice under
 
 State v. Jones
 
 ,
 
 148 Ohio St.3d 167
 
 ,
 
 2016-Ohio-5105
 
 ,
 
 69 N.E.3d 688
 
 , ¶ 28, in that a witness who was present during the events underlying the criminal conduct has died and Hart is unable to seek verification of his story from two other deceased witnesses who were present around the time of the events but were not necessarily present for any of the alleged criminal conduct.
 

 Id.
 

 It is irrelevant that Hart is unable to articulate specifically what the testimony would have been.
 

 Id.
 

 {¶ 47} "Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The defendant has the initial burden to show that he was substantially and actually prejudiced due to the delay."
 
 State v. Dixon
 
 ,
 
 2015-Ohio-3144
 
 ,
 
 40 N.E.3d 601
 
 , ¶ 19 (8th Dist.), citing
 
 State v. Whiting
 
 ,
 
 84 Ohio St.3d 215
 
 , 217,
 
 702 N.E.2d 1199
 
 (1998). If a defendant can show actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay.
 

 Id.
 

 , citing
 
 State v. Walls
 
 ,
 
 96 Ohio St.3d 437
 
 ,
 
 2002-Ohio-5059
 
 ,
 
 775 N.E.2d 829
 
 , ¶ 51, and
 
 Whiting
 
 at 217,
 
 702 N.E.2d 1199
 
 .
 

 {¶ 48} In this case, the trial court did not resolve the second part of the inquiry; Hart's motion was denied after the state provided an argument to support its burden to produce evidence of a justifiable reason for delay but before Hart had an opportunity to respond. By implication, the trial court could only have considered the first prong of the preindictment-delay inquiry.
 

 {¶ 49} In this case, the police report indicated that the victim spoke with Hart's grandmother, who was erroneously referred to as someone else, on the day of the incident.
 
 Jones
 
 ,
 
 148 Ohio St.3d 167
 
 ,
 
 2016-Ohio-5105
 
 ,
 
 69 N.E.3d 688
 
 , at ¶ 28 (defendant may establish actual prejudice where he is unable to seek verification of his story from deceased witnesses present during the alleged crimes). Hart also identified
 two other individuals by name that were allegedly present in the car and in the basement who are also no longer available to testify.
 

 Id.
 

 {¶ 50} Importantly, one of those individuals was in a position to witness the alleged sexual assault, which had occurred on the couch in the common area of the basement according to the victim's testimony. The victim claimed that after she and the others had smoked marijuana for a bit, her friend and another guy went to a separate room. It was then, while she and Hart were on the couch with another male who continued to play video games and who was later identified by Hart as being deceased at the time of trial, that Hart started forcefully fondling and kissing her, despite the victim's panicked protestations. The victim stood up and began walking toward the exit, but she was blocked by Hart who then forced her into the weight room. Importantly, the victim claimed her friend had left the room by that time, so the deceased witness was the only person other than the victim and Hart to have observed the events as they unfolded.
 

 {¶ 51} According to the victim's friend, after the group sat around for a bit, the victim voluntarily went into the separate room with Hart and the friend did not observe any of the events as described by the victim.
 

 {¶ 52} Thus, and contrary to the lead opinion's conclusion that Hart did not have a story or version of events, Hart is not relying on broad assertions of missing evidence to establish prejudice - he presented a tangible connection between the deceased witness and his defense. The deceased witness was present when the victim claimed to have been sexually assaulted. Moreover, the lead opinion recognizes that Hart's story was essential to the conviction: "the jury's determination was necessarily based on the victim's credibility vis-a-vis the defendant's version of the facts." Lead opinion at ¶ 43. Because the victim's credibility was essential to the state's case, it cannot be concluded that the defendant failed to demonstrate actual prejudice under the first prong of the preindictment-delay analysis. At the least, Hart is unable to seek verification of his version of events or seek to impugn the victim's credibility with the testimony of the only other person present during the initial stages of the alleged sexual assault.
 

 {¶ 53} The state's only argument against the demonstrated, actual prejudice is that Hart is unable to specifically indicate to what, if anything, the unavailable witnesses would testify, and therefore, Hart's claims of prejudice are speculative. The Ohio Supreme Court has rejected this all-or-nothing approach.
 
 Jones,
 

 148 Ohio St.3d 167
 
 ,
 
 2016-Ohio-5105
 
 ,
 
 69 N.E.3d 688
 
 , at ¶¶ 27-28 ;
 
 State v. Luck
 
 ,
 
 15 Ohio St.3d 150
 
 ,
 
 472 N.E.2d 1097
 
 (1984) (although there is no record demonstrating the content of the missing witness's testimony, the defendant can demonstrate actual prejudice based on the inability to verify his story or establish mitigating factors). A defendant does not need to articulate specifically what the unavailable witness would have said. The lack of specificity does not render the claim of prejudice fatally speculative.
 
 Jones
 
 at ¶ 27. The lead opinion disagrees, concluding that Hart's inability to articulate what the deceased witnesses' testimony would have been renders his claim for actual prejudice to be speculative because Hart cannot demonstrate that the testimony of the deceased witnesses would have minimized or eliminated the impact of the state's evidence. As the Ohio Supreme Court has rejected this rationale, so should we.
 

 {¶ 54} Although I previously took the approach that a bright-line rule requiring a defendant claiming prejudice to show exactly what a missing witness would have
 said was the best approach, as noted, that view was rejected by the Supreme Court in
 
 Jones
 
 . Because of the Supreme Court's holding in
 
 Jones
 
 , I would hold that the trial court erred in denying Hart's motion for preindictment delay without considering the second part of the inquiry.
 
 Jones
 
 at ¶ 18 (courts must consider the second prong of the inquiry once the defendant demonstrates actual prejudice). The matter should be remanded for the trial court to consider the entirety of the preindictment-delay analysis.
 

 {¶ 55} With respect to the issues relating to the evidence admitted under Evid.R. 404(B), although I agree with the outcome, a small clarification is necessary. All too often the state presents Evid.R. 404(B) as if the jury must determine the state's intended reason for introducing the other acts evidence. For example, most juries are instructed, as they were in this case, that
 

 [e]vidence was received about the commission of other acts than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conforming or in accordance with that character.
 

 If you find that evidence of other acts is true and that the defendant committed them, you may consider that evidence only for the purposes of deciding whether it proves, A, the absence of mistake or accident, or B, the defendant's motive, opportunity, intent, or purpose, preparation or plan to commit the offense charged in this trial, or C, knowledge of circumstances surrounding the offense charged in this trial, or D, the identity of the person who committed the offense in this trial. That evidence cannot be considered for any other purpose.
 

 {¶ 56} Evid.R. 404(B) provides a nonexhaustive list of alternatives for admitting other acts evidence. Not all factors are relevant in every case such that the above instruction is always appropriate. The proponent of the evidence must demonstrate the applicability of one or more of the exceptions. It is not enough to simply cite them all and let the jury figure out which one applies.
 

 {¶ 57} The lead opinion thoroughly analyzes the issue under
 
 State v. Williams
 
 ,
 
 134 Ohio St.3d 521
 
 ,
 
 2012-Ohio-5695
 
 ,
 
 983 N.E.2d 1278
 
 . The state, however, is not contending that this is a "grooming" case, one in which the defendant systematically takes steps to expose a child to sexual material with the goal of reducing the child's inhibitions to prepare the child for sexual activity.
 
 Id.
 
 at ¶ 21. The state claimed that the other acts evidence demonstrated a scheme, a pattern, or modus operandi because both girls were plied with alcohol and then sexually assaulted.
 
 Williams
 
 has no relevance to the Evid.R. 404(B) discussion in this case other than setting forth the black-letter framework.
 

 {¶ 58} The starting point of the analysis should always be the stated reason upon which the trial court admitted the evidence, or if the record is silent as to the trial court's reasoning, the proponent's stated reason for seeking to admit the evidence. According to the trial court, in this case, the other acts evidence was admitted for the express purpose to demonstrate Hart's motive or intent "to take advantage of young girls when the situation presents itself."
 

 {¶ 59} Taking advantage of a victim whenever the opportunity arises is the quintessential propensity evidence prohibited under Evid.R. 404(B). The trial court permitted the evidence for the purpose of
 demonstrating that if Hart has the opportunity to sexually assault a teenaged girl, he will. I would hold that the trial court abused its discretion in admitting the evidence under its stated rationale. According to the trial court, there was no alternative purpose for the admission of the character evidence; it simply proved Hart's propensity to act in conformity therewith.
 

 {¶ 60} The state concedes the point through its silence. On appeal, the state seeks to affirm the evidentiary judgment on a ground other than relied on by the trial court. The state contends that the other acts evidence of the prior sexual assault was probative of a common plan or scheme. According to the state, the evidence admitted under Evid.R. 404(B) in this case "clearly demonstrated the defendant's intent and scheme in obtaining sexual gratification by isolating two 15 yr [sic] olds in an unknown residence while attempting to get them drunk," and the pattern of conduct is similar between both crimes in that Hart sexually assaulted the victims by first isolating them from their friends.
 

 {¶ 61} There is no evidence to support such a claim. As the lead opinion concluded, Hart's intent, sexual gratification, is inherent to the sexual misconduct in this particular case. The state did not need extrinsic evidence of another sexual assault in order to demonstrate Hart's intent.
 

 {¶ 62} The state's second potential use of the prior bad acts evidence, common scheme, or plan, is not borne out from the evidence either. The other acts evidence of driving the teenaged victim to a house she was unfamiliar with and engaging in similar sexual misconduct is not probative evidence of a common plan or scheme. In
 
 In re C.T.
 
 ,
 
 2013-Ohio-2458
 
 ,
 
 991 N.E.2d 1171
 
 , ¶ 33 (8th Dist.), it was concluded that manufacturing an opportunity to be alone with a young female to commit acts of sexual misconduct was not the type of plan or scheme envisioned by the drafters of Evid.R. 404(B).
 
 Id.
 
 at ¶ 33. In that case, the offender was accused of forcing the victim to perform oral sex on him and digitally penetrating her after the defendant drove the victim to a secluded area.
 
 Id.
 
 at ¶ 20. At trial under cross-examination, the offender stated that he had previously been convicted of the same type of sexual misdeeds with another victim after likewise taking the victim to a secluded area to facilitate the crime.
 
 Id.
 
 at ¶ 21. According to the state, in that case, the similarities between the sexual misconduct and the similar methods of isolating the victim demonstrated a common plan or scheme for the purposes of Evid.R. 404(B).
 

 {¶ 63} That reasoning was rejected.
 
 Id.
 
 It was concluded that similarities between the charged crimes and the prior bad acts are insufficient to demonstrate a common scheme or plan.
 
 Id.
 
 at ¶ 33. Finding an opportunity to be alone with another is a necessary part of engaging in sexual misconduct, and the similarities with respect to the sexual misconduct address the elements of the sexual assault crimes, not a common plan or scheme.
 
 Id.
 
 This is not to suggest that the similarities would be entirely irrelevant in all cases. For instance, the similarities in committing the crimes could be probative of a behavioral footprint for the purposes of establishing identity or intent.
 
 State v. Wilson
 
 ,
 
 2016-Ohio-2718
 
 ,
 
 51 N.E.3d 676
 
 , ¶ 50 (8th Dist.). As already noted, identity was not an issue at trial because the state established identity with the undisputed DNA evidence and the intent to obtain sexual gratification is inherent in the rape crime itself.
 

 {¶ 64} With that clarification, I agree with the lead opinion that the other acts evidence of Hart's earlier conviction was inadmissible under Evid.R. 404(B).
 

 {¶ 65} Nevertheless, I dissent from the lead opinion's conclusion - that the existence of a deceased witness, who was present during the acts underlying the criminal conduct, does not constitute actual prejudice because the defendant is unable to articulate specifically what that witness's testimony would have been. The Ohio Supreme Court has unambiguously rejected the lead opinion's stated rationale. I would find that Hart has demonstrated actual prejudice from his inability to call the only other person present during the events to which the victim testified, and remand for the trial court to consider the remaining aspects of the preindictment-delay analysis.